On behalf of the state, Ms. Kristen and Ms. Schwinn. Good morning. Good morning, Counselor. Mr. Magna. Excuse me real quick on this. Of course, you can sit down if you want to. You can sit out in front of her if you want to. Up there? My client, Jesse Lopez, was convicted of armed violence solely on the testimony of Blake Pennell. He was not only a key witness, he was the only witness who said that my client committed a shooting. Only Pennell's word. I just can't emphasize that enough. There was nothing else. The victim said he saw your client before. I mean, he's seen him. He says he knows him. He lives. They apparently live in the same neighborhood, but he never said he was the shooter. He said he saw the shooter. He said he thought he could identify the shooter. He was not able to identify the shooter. He said it was a white or Hispanic man. And my client is a Hispanic man. But other than general, I mean, he had I think he had facial hairs. I mean, there were some ways in which he was similar to the description. But when you're shown somebody's face, you have a chance to identify him. And he didn't identify him. Pennell, on the other hand, we know, has always flouted the rules of society. And there are so many reasons not to believe him. He's lied before. He knew he and he knew that he had to perform for the state in this case. He had to tell them what they wanted to hear. If they didn't, he wasn't going to be able to leave the state. He was apparently going to set up residence in another state with his daughter and leave his own life of crime behind. For some reason, he decided not to talk about the murders that he was involved in. He admitted in the federal court that he and someone called Pep Dog had agreed to kill Chalo Gonzalez. And he also admitted he was involved in the killing of Ricky Robb. Well, as I'm sure the prosecutor is well aware, you can certainly be convicted on the basis of accountability. So even if he didn't pull the trigger in those cases, it sounds like he was guilty of murder twice and he's allowed to go free. So he had an awful lot of reason to please the state in this case and move on. And the fact that the state didn't have an epiphany about this new newly discovered evidence, as Judge Wagner called it, doesn't excuse the state's failure. I don't know why six months after trial, someone decided to obtain the transcripts of the federal grand jury. The record just doesn't explain that. And in the trial court... Well, does it make any difference? Well, it makes a difference that we didn't have it at trial. It doesn't matter why they decided to do it six months later. I'm just saying I don't know. I'm not saying they're not going to get up and say inadvertent and no problem, right? They can't do that. Well, they have said that. As I pointed out in my reply brief, they said seven times that it was an inadvertent error. But they don't rely on that as an excuse. It's one of their excuses, I think. In the beginning, they said that he'd never asked for it in the trial court. That's what their excuse was. And then they kind of switched over to, okay, we were supposed to provide it, but we didn't know about it. This was this whole other group of people, the federal government. We didn't know they had done anything with Pennell. Well, they worked on this case together. The FBI, Kane County, and the Aurora Police all worked together. So it's rather disingenuous to say I don't know what they're doing. I guess what I'm really trying to ask you is whether they may throw that stuff in to make themselves look not so sinister or whatever you want to say, but I don't think they rely on that and say that excuses their obligation. On appeal, I don't know what they did. On appeal, they've taken the position that they should have given him this stuff. On appeal, their basic point is that, well, he admitted to a burglary and some misdemeanors, so the judge could weigh his credibility. That's good enough. Well, I think there's a big difference between a burglary and murders, and I think that he should have committed. He was willing to lie again. He had no reason to believe he's a truthful witness. All right, so it's the same judge, though, right? It's the same judge. So the question is, when we're confronted with a question of would this judicial evidence have changed the outcome? Now, obviously, we can't ever tell that with a jury. I don't think that's exactly correct, Justice. Okay, I'm sorry. It's the reasonable probability. Okay, you're right, and I'm sorry. And Judge Wagner didn't take that approach. He took the that there has to be a concrete basis. But he said it because he was considering it as newly discovered evidence, as I discussed in my brief. This isn't newly discovered evidence. It was in the possession of the state all along. It's not newly discovered. It was a Brady violation, and that's a different standard. They have to have concrete proof that this new evidence would have changed the outcome. A reasonable probability is quite different. I think we would all agree. And the judge also incorrectly stated that he wouldn't have allowed the evidence anyway because he said you're not allowed to use specific act impeachment. And since this was bias impeachment, he was obviously wrong on that point as well. So whether we would have convinced Judge Wagner had he considered it as a Brady violation, this court would have recognized that that evidence should have been allowed as impeachment, as bias impeachment in this case under these circumstances. And that argument was made to him below that he was using the wrong standard. But it wasn't me. I don't think it was. I haven't seen it. I didn't look at exactly what they said, but they kind of it was spread out between trial counsel not obtaining it and the state not providing it. No, but I mean, the standard that he was going to use as to whether it would have changed the outcome, whether it was, you know, it wasn't strong possibility or just likelihood or whatever. You're saying he used the wrong basis upon which to evaluate whether he would have decided differently. And did somebody tell him that you're using the wrong standard? That was the post trial motion. And after the post trial motion, there was no motion to reconsider. It was just appealed as newly discovered evidence. I'm sorry. He was applying it as newly discovered. Yes. So the burden is different than with a Brady. Right. And he started his decisions, including Brady, sort of. And then he sort of at the end just focused on newly discovered evidence. And that was all he looked at was this wouldn't have changed my mind. And besides, I wouldn't have admitted it. Well, he said it probably wouldn't change the results of the trial. Yeah. And so, I mean, he's kind of going in the direction of the standard for Brady, isn't he? I mean, Brady is a reasonable probability that the result would have been different. Here he said, now I realize he said that it's not such a conclusive character. He's kind of giving some weight or degree to this testimony. But he said it's not such a character that it would probably change the result of the trial. I mean, how is that significantly different when it's a person who actually heard the case, now knows the new stuff, and says, you know, it probably wouldn't have changed my mind. He says that it probably wouldn't have changed his mind. And he also says he probably wouldn't have let it in. So I don't know that we can rely on what he would have. I know, but he says the potential additional evidence. We can't go by what the judge says. He says the potential additional evidence contained in the transcript was not of such a conclusive character that it would probably change the results of the trial. I mean, that's separate aside from whether he would have allowed it in. We can speculate on that all day if, you know, we don't know what he would have done. I mean, I guess there's some indication he might not have let it in. But here the judge is actually saying, I've seen the evidence. It's not of such a weight that it would probably change my mind. Well, it was specifically held in Bagley that the question is not how this judge would subjectively evaluate the evidence. It is to consider directly any adverse effect that the prosecutor's failure might have had on the preparation or presentation of the defendant's case. And here we're getting into complete speculation. But we do know that trial defense counsel did say that there was loads of impeachment available in this, in his statement and in his testimony. So she felt confident that she could have, you know, impeached him significantly. And I think there's some reason to believe that. I mean, Mr. Lopez is just a person. And Blake Pennell one day decides, I'm going to pin a shooting on this guy. No one else said that was his voice on the tape recording. He just chose him. And I don't know if they don't like each other. I don't know if they, you know, knew each other. We only have Blake Pennell's work. And he was shown not to be truthful. It just violates due process that he wasn't given this information in a timely manner where he could have used it. Or he might have decided to take a plea bargain. He might have decided to go with the jury. We don't know what effect it would have had. And I think that in this case where there was just one witness and he was shown to be, I mean, there's an inference when you have these convictions that you're not going to be believable. So we already know. We have the inference that he's not going to be truthful. The convictions that were presented to the court. Yes, we had that already. And then when you add on to that the fact that he didn't reveal all this other stuff. I mean, I don't remember the testimony specifically. He was probably led and he probably didn't have an opportunity to recite exactly what he had said in the grand jury. But he didn't bring out all this information. And all this information was highly relevant and critical. The state at one point says, well, the defense could have gotten this information as well. What's your response to that? My response is I'm not so sure. It was a sealed federal indictment. I don't know that a public defender from Kane County can get that unsealed. It took an assistant United States attorney to get it unsealed in this case. I have no experience in unsealing federal indictments, but I don't know that they could have gotten it. And they didn't know that he had testified before a federal grand jury. So they couldn't even specifically say we need this federal grand jury testimony, too. And you're submitting that the state knew because they were working with feds in order to get it. They were working with feds, and I think it's beyond credibility that they didn't know that the state, that the feds had accomplished, had gathered, had gotten a statement from him, and that they had called him in before at grand jury. You know, counsel, when we get down to, you know, there's loads of things that they could have impeached him with and everything. I was really looking in both of your briefs, certainly in yours, for sort of like two columns that would list what they had available and what they didn't have available, the defendant. I mean, list all these things, you know, so we could really juxtapose what was available to impeach this guy. I mean, just reading through the briefs, you know, we don't know exactly. It's not easy for us to determine what the specific things were in the grand jury. I mean, there's references to murders here and there. But, I mean, really make that specific and concrete. That's what I was looking to see. And if it wasn't that dramatic, then I'd look for the state to say, no, look, here's what they specifically. I mean, they only seem two columns or something just to really juxtapose it. But that's not done anywhere. It's hard to be specific. It falls completely on me. But I know that there were two murders mentioned. And I think all of these other things where he was with some other guys and there was a shooting and a woman lost her leg and I don't know whose bullet it was. Well, he was there. He was part of that, whether he chose to accept responsibility. The prosecutors he was working with certainly should have known that he was responsible for that. These are serious crimes. Based on what Justice O'Malley said, I mean, when we're talking about these two things, you mentioned two murders a couple of times. Now, one of the murders I'm pretty clear was not disclosed until the transcript. But the Rob murder, I'm a little confused. Was the trial court aware of that or not? It's very confusing. Because the trial court makes some reference to a murder, doesn't it? They do refer to a murder, but he doesn't say what murder he's talking about either. So I'm as confused about that as you are, quite frankly. But the trial court knew that he was getting a pass on a murder. He knew that he was involved in a murder. He knew there was something about a murder there. But he knew he was getting a pass on it. He knew he wasn't being charged with a murder that he was involved in. I mean, the trial court knew that, correct? I think you're talking about when he did his order on the post-trial motion for a new trial. Yeah, he refers to a murder that was in there. But he also, I mean, he says... And the facts kind of look like the Rob murder. You can kind of get that it was the Rob murder. Yeah, but I don't know anything else about the Rob murder, personally. So I don't know if it was the Rob murder. When we talk about materiality, do we know that the trial court was aware of this individual's criminal convictions, the punishments he received for those convictions, the benefits he received from his cooperation, his extensive testimony about his experience as a Latin king and what that all entailed, and then this one murder that the trial court was aware that he was getting a pass on? I mean, that's pretty substantial stuff when you compare it to maybe what the trial court was not aware of. But when we're judging materiality, again, we're looking at whether the outcome, whether there's a reasonable probability the outcome would have been different. I mean, would this have sown this individual's credibility so much more than what the trial court already knew that it would have been probably reasonable probability that it would have resulted in Will? I think there are two possible ways this could have gone, that if the evidence of the murders and the other crimes, I mean, I think a woman losing her leg is pretty serious, too. It could have affected his credibility. Since he had no credibility to start with, this would have further dug his hole. He would have been less and less believable. A reasonable fact finder would want to know for sure who the person was. I mean, that's just basic that if you don't know who the shooter was, and we've only got one person's word. I think secondly, when it came out after trial, it's hard to judge exactly its importance because in Judge Wagner's mind, it wasn't a miscible piece of evidence. So I don't know that he weighed him as a murderer when he weighed his credibility. He'd already believed him. He'd already put himself on record as saying, I believe Pennell, and I believe that Jesse did this. Now, he's given some other information, and you'd have to backtrack. And I think nobody wants to admit they were wrong, that they believed the wrong person, or I was fooled, you know, it was my face read. And since he said he wasn't going to admit it anyway, he may have in his own mind said, well, since I wasn't going to admit it, I can't really admit it now, and that's why I don't think it would have changed the result. I just want to clarify something in response to a question that Judge Burke raised a second ago. I've got a note here that indicates that the defendant has conceded that the state properly disclosed that Pennell had been given a walk, quote, unquote, for the rob murder, and that that was disclosed to the trial court in a timely fashion. I think that Ms. Pecorelli may have said that, that may be where your note came from, because I have a sort of feeling about that, too, but I don't have anything that says that. I can't cite you to anywhere that we have the rob murder. And Ms. Pecorelli was defense? Counsel at trial. Okay. Very good. No, not good. Is there anything else I could tell you? Not at this time, no. Thank you. We would renew our request that you grant Jesse Lopez a new trial. Thank you. Good morning, and may it please the court. I just want to briefly clarify. Can I start you off with a question? I'm sorry? Can I start you off with a question? Sure. Counsel mentioned that Judge Wagner had made some comment, whether it was offhand comment or part of his ruling, that this evidence wouldn't have been admissible anyway, and that was probably pursuant to the state's argument that the testimony in the grand jury transcript didn't contain any convictions, and so therefore it would not be admissible as impeachment. Correct. I really don't see that argument fleshed out in your brief. Are you conceding that it potentially was admissible? What's your position on the admissibility of the contents of the grand jury transcript? Well, in terms of admissibility under Brady, in terms of the credibility, while it is true that you can look into some actions, they do have to have a criminal conviction in order to actually impeach them on. None of the grand jury transcripts has any sort of convictions listed in it. In addressing the Robb murder, I want to just point out that there was a stipulation between the state and the defense that the witness was given transactional immunity for the homicide of Ricky Robb, and that's People's Exhibit Number 13, and that was admitted into evidence. The judge knew that there was that murder that was fully disclosed. That is not an issue that was brand new that came up with the grand jury testimony. Are you saying that this evidence would not be admissible then in the first instance? If that's the case, then it might resolve the whole issue. Even if it was disclosed, it wasn't admissible, so who cares? Respectfully, I think in terms of Brady, it's not looking at whether or not the evidence was admissible or not. I believe that there is case law in it that you do not need to look and determine whether or not the evidence is actually admissible. Under Brady, you look to see if the evidence is disclosed. You look in context of the whole record to see whether or not the new evidence would undermine the confidence of the outcome. And in this instance, the people argue that it did not undermine the confidence of the outcome. In terms of what the defense was able to question the witness on and what was actually disclosed in the grand jury testimony, they really were able to disclose, the people disclosed significant portions of a very generous benefits deal, and that was listed through multiple disclosures in discovery. Additionally, the defense went at length into whether or not the witness was a member of the Latin Kings. Counsel, let me go back to the point you were just raising a second ago, which gets to what I was asking your opponent here. It would be nice if one of you, even today, if you hadn't done your brief, could tell us, here's what the defense had. They had the murder of Rob, they had this gang membership, they had this burglary, and just list these things. And then on the other hand, here's what they didn't have. So we can look at them and say, what's the big deal here, or is it a big deal? But nobody's prepared to do that. Correct. I agree. However, under Brady, it is the defendant's burden to prove that this evidence, this specific evidence, would have undermined the confidence of the outcome. It is not the state's burden to say that. What is the specific evidence, then? I'm sorry, in terms of? What is the specific evidence? You just said whether this specific evidence would undermine the verdict. What is the specific evidence? Well, the people would argue that the evidence seems to be that the witness was involved in 16 to 17 shootings and that there were some gang member shootings. However, the people argue that there really was not anything that the grand jury testimony, the transcript would have disclosed. It's just merely cumulative, and it does not undermine the confidence of the outcome. So that is the position of a prosecutor that once they see that there's so much, this is not a legal term, crap, if you will, out there, that they just can stop turning it over because it's cumulative and they don't need to do their due diligence and find this stuff. Well, I would disagree with that. In terms of, this is a unique situation where the witness was working with both the state officials and with federal officials. So shouldn't they have been able to know this information? Not necessarily. As opposing counsel mentioned, this was under federal seal indictment. It's not necessarily, the state does not always know what's going on in the federal prosecutions. They're doing their own, they are doing different investigative work, and there's not necessarily a, hey, the federal government or the federal state's attorney is going to call them, the district attorney, excuse me, is going to call them and say, hey, we did X, Y, and Z. And in fact, when the defense asked for the grand jury testimony transcripts, that was I believe on February 2nd of 2006, this grand jury testimony that we're arguing about didn't even take place until afterwards. So it makes it difficult for the state to obviously, you know, the state has a duty to always disclose the favorable evidence that it has. But in this instance, they did not have it in their possession. They disclosed six grand jury transcripts from the previous year. And this panel didn't come clean at that point that, hey, I committed this murder as well. I'm sorry? This informant didn't come clean at that point to the state, oh, by the way, I committed this murder as well. Is that what you're saying? No. To be honest, I'm unsure of the record. I'm not sure whether or not when the state's attorney knew that Pennell had committed this rob murder. But regardless, when the state's attorney knew was irrelevant because it was a stipulation between both parties that he had been given immunity for this murder. And that was before the trial court at the trial. And then that was also before the trial court on the motions. I believe during the evidentiary hearing, the defense counsel, when it's testified about whether or not what she would have used in terms of the grand jury testimony, the grand jury transcript, I believe that she misstates and says that, well, I didn't know about this rob murder, but the state sufficiently on cross-examination stated, well, here's a stipulation. You, in fact, agreed to a stipulation. Is that correct? Correct. The rob murder is not something brand new that just came up in this transcript. It had been disclosed. It was in a stipulation between both parties. And therefore, we believe it's irrelevant whether or not when the state knew that there was that murder. But the 16 or 17 shootings, apparently one of them resulted in an amputated leg. Another one resulted in a finger being blown off or something like that. Well, in terms of the shootings, there are a lot of the grand jury testimony seems to indicate it's very speculative and remote. I participated in about 16 to 17 shootings. There's not necessarily a time data on this time. This is when this person was shot. The issue with that isn't really so much participating in them because there was no conviction for them. So, therefore, that's not impeaching. But what's potentially impeaching is the fact that he's not going to be charged with any of the stuff he's talking about. And that goes to potential interest, bias, prejudice, motive, defamatory. But in terms of charging, it's unclear whether or not what the state's attorney knew that they had credible evidence to potentially charge the witness with. They didn't. They ended up getting, you know, he had immunity for the rob murder. He had. It came out both at trial and it was disclosed that he was given use immunity for the several times he testified before the grand jury transcript. The grand jury's in King County. In terms of the 16 to 17 shootings, that's mere speculation. It's really speculation. And in terms of in terms of what we're looking at as Brady badly has stated that evidence that is nearly cumulative or seems weak is therefore the fact that it wasn't disclosed that the error is harmless. So in this instance, while this is information, we do not believe that this information is favorable. All of this is cumulative. We do not believe that this evidence meets the materiality standard set forth in Brady and in Strickland. The defendant must prove that the probability was sufficient to undermine the confidence of the outcome. And as this court has stated, the defendant did not state for specific instances that it would have used within the grand jury testimony that was not disclosed previously, such as the robber. That would have changed the outcome that they did not. They did not bring any. What about the fact that the judge used the wrong analysis here? Newly discovered evidence versus Brady? In terms of newly discovered evidence, I believe in terms of what Justice Burke had said, and I believe the judge, well, he couched it on a newly discovered evidence. I truly believe that there was a sufficient Brady analysis in there because really newly discovered evidence and Brady in this case seems to fall under witness credibility. And whether or not Pinnell was credible. And in this instance, witness credibility in the newly discovered evidence, he did it under the Cookson case where it was termed cumulative, it was speculative, and therefore it didn't change the outcome. That's very similar to the standards we use under Badley and Brady violations. We look to see if the evidence is cumulative in terms of impeachment, if it's remote, if it's weak. And that seems to be the people would argue that that seems to be a fairly similar standard in terms of couching it under newly discovered evidence. We argue that even if it was looked under newly discovered evidence, the state would still would still win because, again, it did not change the outcome. It was cumulative and it was not not discovered through due diligence or through lack of due diligence. Excuse me. But under newly discovered evidence, the standard is not a reasonable probability where it is under Brady, correct? That would be correct, yes. However, under reasonable probability, again, if you want to look at under Brady, the defense has not brought up anything that would substantially or sufficiently change the confidence of the outcome. Again, it's not whether or not we have to look at for Brady whether or not the defendant received a fair trial in absence of this evidence. And in this case, the people contend that they did. The state turned over multiple documents sufficient in terms of benefits, tattoo removals, relocation fees, fees for hospital expenses. He had four cases dismissed. His girlfriend's battery case was dismissed. He received, instead of boot camp for residential burglary, it was downgraded to burglary and probation. These are the benefits he received are well documented. The fact that he had a he was involved in the Robb murder was disclosed prior to trial. It was stipulated. And so therefore, that's that's not a new that is not a new issue. One moment, please. Just to briefly address on what the opposing counsel said in terms of if witness did not comply or did not test favorably, he would see he would not be able to leave the state or receive a prison sentence. It came out it was evidenced in trial that the witness does not even live in the state anymore. That is that that is not an argument, nor is the fact that there is nothing that says that he's going to receive a prison sentence. There is there's nothing in the record that indicates that he had to testify a certain way in terms in order to receive to continue to receive benefits. It came out it was disclosed in or he testified a trial that he no longer receives any benefits. And in fact, the benefits he receives is if he comes to testify and they'll pay for his travel. What's the benefit that he's going to receive on the new murder? I'm sorry. The new indictment. The witness in terms of the sealed indictment. What benefit did he get on that? Uh, I'm unaware in terms of the ceiling indictment. I believe what was under seal was the grand jury transcript. And at that point he was the witness testified in terms of his extensive background within the Latin kings and some of his discretion. What happened when he was in the land came in terms of the criminal activity. I'm unaware of in terms of what indictment the witness was there. Another murder in the sealed indictment of the sealed transcript. Yeah. In terms of an actual murder. I don't I do not believe so. I believe the only murder that was seen in particular that he was around murder. There was indication in terms of there was a he may have struck a rival. I do not believe that he specifically confessed to another another murder. And in that case, again, it goes towards the speculative nature in terms of who who was murdered and what what might have happened. So I would disagree. I think there's only one one specific murder disclosed in the grand jury testimony. So. There are no other questions. I don't think so. Thank you for your defense. Thank you. Thank you. Well, I was trying to listen to counsel. I did notice that I do have in my notes that trial counsel did say that Penel avoided a murder prosecution and he was well maintained and paid. So she knew that much before she got the federal information. This is in addition to the Rob. No. This is the wrong. Yes. OK. The other murder, I think that we're talking about is the one that Penel and Peck boy agreed to kill somebody called Chalo Gonzalez. And he was shot and killed. And whether Penel wrote, well, first of all, he wrote a statement as well as did grand testimony, grand jury testimony before the federal grand jury. So there was another obligation to disclose that statement, which has never been discussed. Really? Actually, the entirety of the statement was contained within the transcript. I believe it was. So I mean, if they disclose the transcript, which contains the entirety of the statement, which was read to the grand jury, then that is disclosure. But they could have, on that basis, gotten that information to the defense earlier. The excuse of the sealed grand jury indictment, I guess, is my point. Don't you think it's telling when the court and how do we overcome when the court states, even if I had this information, it would not have changed the verdict? With all due respect, that's not the question that he was supposed to ask himself. And he was mistaken on a couple of other points, so I don't know that we can just rely on his ruling. He said, on the basis of newly discovered evidence, I'm denying this. So he only considered it on that one narrow argument, I guess, issue. Now, is it your position that the specific acts that are admitted to in the grand jury testimony, those specific acts would be admissible? I think that he should be questioned about what he said in the grand jury. And if he said, if he actually did it or he didn't, counsel complained that it was speculative and remote. Well, it could have been fleshed out. We never had a chance to flesh it out. To ask him, well, isn't it also true that you're getting away with the murder of at least one other person? How many other people were there? You know, he was just allowed to put back. He was an enforcer for the gang. He said he was an enforcer. He put all of it behind him and just moved on, and he was a killer. And it makes his bias so critically important. But didn't the judge know that he was a killer? He knew he was an enforcer. He knew he was a bad guy, right? He knew he was an enforcer after the trial, not at trial. At trial, he said, oh, I attended a few meetings. And he made it sound like he was an underling. I don't think there was anything speculative about the fact that somebody says that I participated in 16 or 17 shootings, that I actually shot 10 or 11 other people. I don't. Actually, that fact standing alone would be inadmissible if it didn't result in a conviction. But it shows his bias. Because he wasn't charged or was potentially not being charged with those things? Yes, apparently he's not going to be charged. The prosecutor said that he had little, if any, leverage against him in his closing argument. So apparently they're done with him, and he's not going to be charged with anything. And we have no idea whether he was given any promises or anything in exchange for? In the federal grand jury? Right. Yeah, it looks, I mean, I would assume he's getting transactional immunity from the federal grand jury. He admitted there to murders. There's a federal murder statute also that he could have been charged under. So I don't think he would have been this open if he wasn't given blanket immunity, just logically. I would just like to point out that it's been said that the testimony of a single witness, if positive and credible, is enough to convict. And Blake Pinnell was not credible. He wasn't positive. He was positive about what he heard. But he could not be corroborated in any way. And I don't think his testimony was sufficient to uphold the conviction. Are there any other questions? I don't believe so. Thank you. Thank you both for your arguments. The matter will be taken under advisement. The decision will issue a due course.